IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RASHAAD A. IMANI,

        Petitioner,                              OPINION AND ORDER

v.                                             11-cv-677-wmc

WILLIAM POLLARD, Warden,
Waupun Correctional Institution,

        Respondent.[1]

Petitioner Rashaad A. Imani seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging the validity of his state court conviction. Imani argues primarily that he was denied the constitutional right to represent himself during his trial. After conducting a preliminary review of the petition, this court directed respondent to show cause why relief should not be granted. The respondent filed an answer, along with records from the relevant state court proceedings, and both parties subsequently submitted briefing. Although the petition presents a close legal question, after considering all of the parties' submissions and the state court record, the court will deny Imani's petition for reasons set forth below.

---

[1] When petitioner filed this case he was incarcerated by the Wisconsin Department of Corrections at the Wisconsin Secure Program Facility in Boscobel. Because petitioner indicates that he has been reassigned to the Waupun Correctional Institution, the court has substituted Warden William Pollard as the proper respondent pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the U.S. District Courts.

FACTS

**A. Background**

As summarized by the Wisconsin Supreme Court, the facts underlying petitioner's offense of conviction are as follows:

> ¶ 4 . . . [O]n March 1, 2006, Imani and his cousin, Raziga Imani, masked and carrying firearms, entered the Guaranty Bank inside the Pick'n Save grocery store on Appleton Avenue in Menomonee Falls. The Imanis demanded money from the bank employees and left with a metal bank box containing in excess of $100,000. With Imani driving, they fled from the scene in a stolen vehicle and were subject to a high-speed pursuit by a Menomonee Falls police officer. Imani eventually lost control of the vehicle and crashed on Hampton Avenue. The Imanis escaped from the vehicle on foot and separated.

> ¶ 5 Still carrying his firearm, Imani entered the Milwaukee Washing Machine, Inc. store on Appleton Avenue and demanded a ride from the driver of the Buick Riviera parked outside. He told the driver, James Dukes (Dukes), that he had just robbed a bank in Menomonee Falls.  Dukes drove Imani to a location about four or five minutes away. A fingerprint lifted from the Buick's passenger's side door handle was later identified as Imani's, and when presented by the police with a range of photographs, Dukes selected Imani as the individual who carjacked him.

*State v. Imani*, 2010 WI 66, 326 Wis. 2d 179, 188-89, 786 N.W.2d 40 (footnote omitted).

Both petitioner and his cousin, Raziga, were apprehended by police on the day of the robbery.[2]  At that time, Raziga admitted to his role in the robbery, although petitioner did not.

---

[2] For simplicity, petitioner Rashaad Imani will be referred to here as petitioner or Imani, while his cousin and co-defendant, Raziga Imani, will be referred to as Raziga.

## B. Conviction in Wisconsin Circuit Court

Petitioner was charged as a repeat offender with aggravated robbery and possession of a firearm as a felon in *State v. Imani*, Waukesha County Case No. 06CF677. Through his court-appointed attorney, petitioner filed a pretrial motion to suppress his identification by James Dukes on the grounds that media coverage may have tainted his recollection.

Petitioner's and his cousin's joint trial was scheduled to commence on August 28, 2007. At a pretrial hearing on July 31, 2007, the circuit court denied petitioner's motion to suppress Dukes' identification testimony. Raziga also appeared at the pretrial hearing, representing himself with the assistance of stand-by counsel.

At the close of that hearing, petitioner stated that he, too, also wanted to represent himself at trial. The circuit court then asked him why. Petitioner explained that he did not feel as though his counsel "spoke up enough for [him]" during the motion hearing and that he was "very dissatisfied." (Dkt. # 7, Exh. 20, *Motion Hearing Tran*. at 30.) In particular, he was upset that his counsel neither played a news broadcast at the hearing in an attempt to jog Dukes' memory, nor fully investigated the circumstances surrounding the fingerprint analysis. Petitioner expressed further frustration that he had "been through this with about three lawyers now" and was unsatisfied with all of their efforts. (*Id*. at 31.)

Thus, petitioner felt that he could best represent himself at trial:

> So, when it comes to trial I know, like I said before, ain't nobody going to represent myself better than me. I've been dealing with this case

3

for over a year now and I'm pretty sure that I got a fuller defense prepared that I've been preparing myself, you know, with the help of my lawyers, you know. I mean, I've been through the preliminary hearing, so I then watched my lawyers question a few witnesses, you know. I think I know how to articulate myself very well.

I might not be too eloquent in speech, you know, as like my lawyer here. But I know that when it come to trial, you know, I can represent myself well enough.

(*Id*. at 33-34.)

The circuit court tried to convince petitioner to continue working with his appointed counsel, but petitioner insisted that he wanted to question the witnesses against him and to ask questions that he did not believe his attorney would present. (*Id*. at 34-35.) The circuit court then asked petitioner to convince him that he was "competent" to represent himself. Petitioner responded that he had been "working on" his case for 13 months, had completed the tenth grade, could read and write English, and that he could read at a college level. Petitioner also represented that he had appeared in court at least five times before in other cases, though admittedly always with counsel:

The Court: And what experience do you have with the legal system? Have you ever appeared in court besides this case?

Mr. Rashaad Imani: Of course.

The Court: For what kind of matters, criminal matters, or?

Mr. Rashaad Imani: Criminal matters.

The Court: How many times do you think?

Mr. Rashaad Imani: At least maybe, five.

4

> The Court: Have you ever represented yourself in court before?
>
> Mr. Rashaad Imani: No.
>
> The Court: You have always had a lawyer?
>
> Mr. Rashaad Imani: Yes.

(*Id.* at 36.)   After the State expressed concern that the trial would be unduly delayed by irrelevant questions and objections, petitioner advised the circuit court that he would be willing to let his appointed attorney act as "stand-by counsel."

Ultimately, the circuit court denied petitioner's motion to represent himself with the following explanation:

> While it is not the last minute on the clock we're getting close to a jury trial that requires substantial and extensive preparation. And I'm -- because it is a two defendant trial it makes it particularly difficult to get that preparation on track. We not only have to have the State and Defendant, we have two defendants.
>
> And everybody has to be prepared and ready to start the same day at the same time, and keep the case organized together. That means that any potential threat to keeping the schedule is an even bigger issue than it otherwise would be.
>
> Since Mr. Raziga Imani raised this issue a while ago there has been more opportunity for him to prepare himself and be ready for trial.  This is more of an eleventh hour request.
>
> I also have in mind that Mr. Rashaad Imani has had several lawyers. And while he certainly is entitled to some degree to have the lawyer of his choice and to switch lawyers, that is not an unlimited right. It has to be balanced against proper preparation and conducting of a trial.
>
> The reasons he gives they seem to be episodic driven, he comes to court today on a motion, he doesn't win the motion and now he is

disgruntled.  That's in and of itself not a sufficiently rational basis to justify such a decision.

. . . .

I don't know that much about his capability, but he has only got a 10th grade education, he said he reads at a college level, that's the only information I have on the subject of his education and background.

He says he has been to court, but apparently those didn't involve trials, and he didn't represent himself. So while he has some observational experience with the criminal court system, it hasn't been presented to me that he has any experience actually conducting proceedings like a criminal court trial.

So in order to preserve the trial date, maintain the opportunity to be prepared and go forward, and to not make a flippant short term or immature decision go into effect, I'm going to deny it at this point.

(*Id*. at 38-40.)  Despite denying the motion, the circuit court went on to explain that it would be willing to hear petitioner's motion again, so long as it would not jeopardize the trial date.  (*Id*. at 40.)

Petitioner attempted more than once to interject during the court's explanations, but the court ultimately refused his motion for self-representation.  (*Id*. at 39, 40.) Indeed, petitioner and his counsel never revisited the issue at any time during the remaining four weeks leading up to trial, even after his cousin Raziga pled guilty.

At trial, petitioner was represented by court-appointed counsel.  Pursuant to his plea agreement, Raziga testified against Imani and the jury found petitioner guilty as charged.  The circuit court subsequently sentenced him to serve 25 years' imprisonment to be followed by a 15-year term of extended supervision on the aggravated robbery

count.  The circuit court also imposed a concurrent 10-year sentence on the firearm-possession count.

## C. Wisconsin Court of Appeals

On direct appeal, petitioner argued that (1) the evidence was insufficient to support his conviction; and (2) the circuit court erred by denying his request for leave to represent himself at trial.  In *State v. Imani*, 2009 WI App 98, 320 Wis. 2d 505, 771 N.W.2d 379, the Wisconsin Court of Appeals held that the trial evidence was more than sufficient to support the verdict, but reversed the conviction and remanded the case for a new trial after finding that the circuit court failed to conduct the waiver-of-counsel colloquy required by *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997).  In *Klessig*, the Wisconsin Supreme Court held that a circuit court

> must conduct a colloquy designed to ensure that the defendant (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him [or her], and (4) was aware of the general range of penalties that could have been imposed on him [or her].

*Imani*, 2009 WI App 98, ¶ 14, 771 N.W. 2d 379, 383 (quoting *Klessig*) (alteration in original).

In contrast, the court of appeals noted that the circuit court in Imani's case "did not even touch on" the colloquy required in *Klessig* for the purpose of establishing whether Imani's waiver of counsel was knowing and voluntary.  *Id.*, ¶ 15.  The court further held that, as to competence, the circuit court failed to identify a "specific problem

or disability which might significantly affect [Imani's] ability to communicate a meaningful defense." *Id*., ¶ 17.  Instead, the circuit court sacrificed Imani's right to self-representation "to preserve the trial date" and due to its "concern about conducting an efficient trial." *Id*., ¶ 18.  On those grounds, the court of appeals concluded that Imani was entitled to a new trial.

### D. Review by Wisconsin Supreme Court

The State then filed a petition for review with the Wisconsin Supreme Court, arguing that after finding the trial court failed to conduct the colloquy required by *Klessig*, the court of appeals erred by remanding for a new trial instead of a retrospective hearing. (Dkt. # 7, Exh. 10:6.) The Supreme Court granted the petition and ordered full briefing and oral argument.  (Dkt.#  7, Exh. 12.)

In its brief-in-chief, the State renewed its argument that the court of appeals had erred by remanding for a new trial rather than for a postconviction hearing to address the circuit court's procedural error in failing to conduct a full *Klessig* colloquy.  (Dkt. # 7, Exh. 13:10-15.)  The State argued that because the injury to petitioner was the failure to conduct the required colloquy, and not an established denial of his constitutional right to self-representation, "the proportional remedy is to conduct [a] hearing better late than never if that can be done."  (Dkt. # 7, Exh. 13:12.)  The State also argued that the general presumption of the *non-waiver* of the right to counsel found in *Klessig*, 211 Wis. 2d at 204, meant the petitioner should carry the burden of showing at any retrospective hearing that his waiver was knowing, intelligent and voluntary.  (Dkt. # 7, Exh. 13:15-

17.)  Finally, since neither party carried the burden of proof on the question of whether petitioner *was* in fact competent to represent himself, the State maintained that the decision should have been left to the circuit court's discretion.  (Dkt. # 7, Exh. 13:17-19.)

In response, petitioner conceded that the remedy specified in *Klessig* was a postconviction hearing, but argued that his case was distinguishable from *Klessig*.  (Dkt. 7-14:6-9.)  Petitioner argued, therefore, that a new trial was the more appropriate relief.

While acknowledging that the circuit court failed to conduct the full colloquy contemplated by *Klessig*, the Wisconsin Supreme Court found that the circuit court had substantially complied:

> We conclude that Imani was not deprived of his constitutional right to self-representation because the circuit court properly determined that Imani did not validly waive his right to counsel under *Klessig*. We are cognizant of the fact that the circuit court did not engage Imani in the full colloquy prescribed in *Klessig* and did not utilize the exact language or "magic words" of *Klessig* when conducting its colloquy. The circuit court's inquiry could have been better. Nevertheless, it is evident from the record that the circuit court engaged Imani in two of the four lines of inquiry prescribed in *Klessig*: whether Imani made a deliberate choice to proceed without counsel and whether Imani was aware of the difficulties and disadvantages of self-representation. Because we answer both in the negative, it necessarily follows that Imani did not validly waive his right to counsel. Even had the circuit court engaged him further, the answer would have been the same. Under *Klessig*, as long as the circuit court finds that one of the four conditions is not met, the court cannot permit the defendant to represent himself. We do not impose on circuit courts the requirement of placing form over substance and using "magic words" when the reality of the circumstances dictate the answer.

*Imani*, 2010 WI 98 at ¶ 26 (footnote omitted).

In upholding the circuit court's finding that Imani's request to represent himself was not sufficiently deliberate, the Wisconsin Supreme Court emphasized in particular the knee-jerk nature of his request:

> The circuit court's explanation for denying Imani's motion to represent himself makes apparent that the court could not find that Imani deliberately chose to proceed without counsel. According to the circuit court, Imani's decision to represent himself was "flippant," "short term," and "immature." The reasons he gave did not reflect a deliberate choice but instead were "episodic driven." Specifically, the circuit court found that Imani was "disgruntled" about losing his motion to suppress Dukes' in-court identification of him, and that "in and of itself [was] not a sufficiently rational basis to justify" his decision to represent himself. We agree.

> The record reflects that Imani did not make a deliberate choice to proceed without counsel.  Rather, he made a hasty request on the heels of an unsuccessful motion hearing. Imani's immediate reason for wanting to represent himself was his belief that his counsel did not "sp[eak] up enough for [him] during [that] proceeding." He was particularly upset that his counsel did not play a news broadcast at the hearing, and he "wasn't satisfied with the questions that [his counsel] asked Mr. Dukes." Imani stated, "If [my counsel], you know, doing this type of job here then I know at trial I don't -- I don't feel as though he is going to represent me well enough." It is clear that Imani did not make a deliberate choice to represent himself. Instead, he impulsively moved for self-representation as a result of his aggravation towards counsel and the fact that he did not prevail on the motion to suppress.

> Moreover, the record indicates that despite the circuit court's invitation, Imani never before and never again expressed a desire to represent himself. To the contrary, in this case alone, he was assisted at various times by four different attorneys, and he twice expressly requested new appointment of counsel. He never took the circuit court up on its offer to hear his motion for self-representation again or to permit him to participate at trial with standby counsel. In fact, Imani's decision to represent himself at trial was evidently conditioned upon the assistance of counsel, and thus, he may not have truly sought to waive counsel in the first instance. Specifically, in his "heat of the moment" argument, he informed the circuit court that he "[did not] have any problem with" the

trial being scheduled for the next month "as long as [his] lawyer will make a full investigation into the fingerprint."

We therefore agree with the circuit court's finding that Imani's choice to proceed without counsel, if it even was that, was not deliberate but instead was "episodic driven." The record reflects that he made a hasty request on the heels of an unsuccessful motion hearing and never again expressed a sincere desire to be without the assistance of counsel -- until he was convicted.

*Id.* at ¶¶ 27 - 30 (footnote omitted).

The Wisconsin Supreme Court further found that Imani was not aware of the dangers and difficulties of self-representation, despite the circuit court's failure to broach that subject explicitly:

Without using the "magic words," the circuit court also engaged Imani in a colloquy concerning the difficulties and disadvantages of self-representation. The court twice mentioned the added difficulty in preparing for and conducting a two-defendant jury trial. The court also noted the "complicated and messy" nature of self-representation and how it "is almost always the wrong tactical move" because "it is confusing as to when you're speaking as yourself and when you're speaking on behalf of yourself."

Based upon our review of the record, the circuit court correctly determined that Imani was unaware of the difficulties and disadvantages of self-representation. By his own contention, his success at trial was conditioned upon the assistance of counsel. As he indicated to the circuit court, he was "pretty sure" that he had a "fuller defense prepared that [he had] been preparing [him]self, you know, with the help of [his] lawyers." In addition, as previously mentioned, he told the court that he would be ready to represent himself at trial "as long as [his] lawyer will make a full investigation into the fingerprint." Relying as he did on the assistance of counsel, we cannot conclude that Imani appreciated the difficulties and disadvantages of self-representation, even if we presume that he truly meant to waive his right to counsel.

*Id*. at ¶¶ 31-32.  Thus, the Wisconsin Supreme Court determined that the circuit court sufficiently complied with its decision in *Klessig* and was justified in finding petitioner's waiver invalid.

The Wisconsin Supreme Court went on to conclude that the circuit court's determination that Imani was not competent to proceed *pro se* was supported by the facts in the record:

> In addition to knowingly, intelligently, and voluntarily waiving the right to counsel, a defendant who seeks to represent himself or herself must be competent to proceed *pro se*. *Klessig*, 211 Wis. 2d at 203, 564 N.W.2d 716; *Pickens*, 96 Wis. 2d at 567, 292 N.W.2d 601. Determining whether a defendant is competent to proceed *pro se* is a higher standard than determining whether a defendant is competent to stand trial. *Klessig*, 211 Wis. 2d at 212, 564 N.W.2d 716. "Surely a defendant who, while mentally competent to be tried, is simply incapable of effective communication or, because of less than average intellectual powers, is unable to attain the minimal understanding necessary to present a defense, is not to be allowed 'to go to jail under his own banner.'" *Pickens*, 96 Wis. 2d at 568, 292 N.W.2d 601 (quoting *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965)).

> Whether a defendant is competent to proceed *pro se* is "uniquely a question for the trial court to determine." *Pickens*, 96 Wis. 2d at 568, 292 N.W.2d 601. "It is the trial judge who is in the best position to observe the defendant, his conduct and his demeanor and to evaluate his ability to present at least a meaningful defense." *Id*. In determining whether a defendant is competent to proceed *pro se*, the circuit court may consider the defendant's education, literacy, language fluency, and any physical or psychological disability which may significantly affect his ability to present a defense. *Id*. at 569, 292 N.W.2d 601. A defendant of average ability and intelligence may still be adjudged competent for self-representation, and accordingly, a defendant's "timely and proper request" should be denied only where the circuit court can identify a specific problem or disability that may prevent the defendant from providing a meaningful defense. *Id*. While the determination of competency rests significantly upon the circuit court's judgment and experience, the determination must appear in the record. *Klessig*, 211 Wis. 2d at 212, 564 N.W.2d 716. Our review is limited

to whether the circuit court's determination is "totally unsupported by the facts apparent in the record." *Pickens*, 96 Wis. 2d at 569-70, 292 N.W.2d 601.

In this case, we conclude that the circuit court's determination that Imani was not competent to proceed *pro se* is also supported by the facts in the record. The circuit court inquired into Imani's level of education, his ability to read and write, and his experience with the legal system. Imani possessed only a tenth grade education and asserted, without more, that he read at a college level. As the circuit court correctly observed, Imani's experience with the criminal court system was "observational," as his court appearances always included the assistance of counsel. Considering all those factors, the circuit court determined that Imani did not possess the minimal competence necessary to conduct his own defense. We cannot conclude that the circuit court's determination is "totally unsupported" by the record. *Id*.

Moreover, contrary to the court of appeals' conclusion, it was not error for the circuit court to take into consideration the trial schedule when determining whether Imani was competent to proceed *pro se*. *See Imani*, 320 Wis. 2d 505, ¶ 18, 771 N.W.2d 379. In *Pickens*, which we regard as the controlling authority on competency, *Klessig*, 211 Wis. 2d at 212, 564 N.W.2d 716, this court recognized that a "timely and proper request" to proceed *pro se* should be denied only where the circuit court can identify a specific problem or disability that may prevent the defendant from providing a meaningful defense. *Pickens*, 96 Wis. 2d at 569, 292 N.W.2d 601 (emphasis added). Accordingly, the circuit court was justified in taking into consideration the timing of Imani's motion to represent himself and the fact that it was first presented to the court less than one month before a two-defendant jury trial that required "substantial and extensive preparation."

*Id*. at ¶¶ 36-39. Having found that petitioner did not validly waive his right to counsel and was not competent to proceed *pro se*, the Wisconsin Supreme Court held that the circuit court was required to prevent him from representing himself. *Id*. at ¶ 40.

In a separate opinion, concurring in part and dissenting in part, Justice Crooks; joined by Chief Justice Abrahamson and Justice Bradley, criticized the majority for

casting the issue in the case as whether the trial court properly denied Imani's request to represent himself.  2010 WI 66, ¶¶ 43, 47-48, 326 Wis. 2d 179 (Crooks, J.).  Justice Crooks argued that in doing so, the majority opinion effectively overruled *Klessig*'s "clear, useful bright-line rule," which he characterized as requiring Wisconsin trial courts to hold a full and complete colloquy whenever a defendant moves to proceed *pro se*. *Id*. ¶ 48. The concurrence/dissent would have remanded for a retrospective evidentiary hearing to determine whether Imani's waiver of counsel was knowing, intelligent and voluntary.  *Id*. ¶¶ 43-44.  The concurrence/dissent also objected to the majority's treatment of the competency issue, arguing that:  (1) the majority should not have upheld the trial court's (implicit) determination that Imani was not competent to represent himself, because the circuit court failed to make the requisite finding under *Pickens*, 96 Wis. 2d at 569, that petitioner had a disability or problem that would have prevented him from presenting a meaningful defense; and (2) the trial court never made an explicit determination that petitioner was not competent to represent himself.  *Imani*, 2010 WI 66, ¶¶ 72-74, 326 Wis. 2d 179.

Petitioner filed a motion for reconsideration on grounds that the court, by reaching the question of whether the circuit court properly denied him the right to represent himself, decided the case on an issue that was not presented for review.  (Dkt. # 7, Exh. 17.)  Petitioner asked the court to reconsider its ruling and instead remand for a retrospective evidentiary hearing contemplated by *Klessig*.  The supreme court denied petitioner's motion in summary fashion.  (Dkt. # 7, Exh. 18.)  In a dissent from that

order, Chief Justice Shirley Abrahamson argued that the supreme court's decision violated Imani's "rights of notice and adversary counsel on appeal," arguing that "[d]ue process requires ... the court request additional briefing."

OPINION

Petitioner now seeks relief from his conviction pursuant to 28 U.S.C. § 2254, raising two issues.  First, petitioner contends that his conviction was obtained in violation of his right to self-representation as set forth in *Faretta v. California*, 422 U.S. 806 (1975). Second, he argues that the Wisconsin Supreme Court denied him due process by upholding his conviction on an issue that was not presented in the State's petition for review.  For reasons outlined in more detail below, the court does not address the second issue because the first is dispositive.

## I.      Standard of Review

In his petition for relief pursuant to 28 U.S.C. § 2254, Imani raises the same claim adjudicated by the circuit court on collateral review and by the Wisconsin Court of Appeals.  When a state system issues multiple decisions, a federal habeas corpus court typically considers "the last reasoned opinion on the claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012) (unless a state court adopts or incorporates the reasoning of a prior opinion, 28 U.S.C. § 2254 requires federal courts to review one state decision) (citation omitted).  To the extent

that the Wisconsin Supreme Court addressed petitioner's claims on the merits, he must show that its adjudication --

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The standard outlined in § 2254(d)(1) is exacting and "highly deferential." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 15 (2013); *see also Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011) (emphasizing that state court decisions must be given "the benefit of the doubt"). Even so, it is not insurmountable. *Id*. A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the United States Supreme Court or reaches a different conclusion than that Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005).

Factual determinations made by the state courts are also entitled to "great deference." *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). For purposes of § 2254(d)(2), a state court's factual finding is never unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."

*Wood v. Allen*, — U.S. —, 130 S. Ct. 841, 849 (2010).  Rather, a state court decision involves "an unreasonable determination of the facts" under § 2254(d)(2) only when the state court makes an "unreasonable error in light of the evidence presented to that court." *Collins v. Gaetz*, 612 F.3d 574, 586 (7th Cir. 2010) (citing *Ward v. Sternes*, 334 F.3d 696, 703–04 (7th Cir. 2003)).  Findings of fact are otherwise presumed correct unless the petitioner meets the burden of rebuttal "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## II.     The Sixth Amendment Right of Self-Representation

The Sixth Amendment guarantees in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  United States Supreme Court precedent teaches that "the Sixth Amendment grants a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings."  *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227-28 (1967); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). Nevertheless, it is "beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as the relinquishment of the right is voluntary, knowing, and intelligent."  *Montejo*, 556 U.S. at 786 (citing *Patterson v. Illinois*, 487 U.S. 285, 292 n. 4 (1988); *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  Thus, the Supreme Court has recognized that the Sixth Amendment includes a competent criminal defendant's right to represent himself at trial.  *See Faretta v. California*, 422 U.S. 806, 835-36 (1975).

Because an accused who elects to represent himself relinquishes the traditional benefits associated with the right to counsel, the court must assure that a defendant's waiver of that right is a knowing and intelligent one.  *Faretta*, 422 U.S. at 835 (citing *Johnson*, 304 U.S. at 464-65).  "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  Accordingly, once a defendant unequivocally invokes the right of self-representation, whether expressly or constructively, the court must hold a hearing hearing to ensure defendant's request to proceed without counsel is knowing and voluntary.  *See Faretta*, 422 U.S. at 835-36.

The Supreme Court has since clarified that this so-called *Faretta* hearing requires a two-prong inquiry:  (1) whether the defendant is competent to waive the right to counsel, where competence might appear to be at issue; and (2) whether the defendant's "waiver of his constitutional rights is knowing and voluntary." *Godinez v. Moran*, 509 U.S. 389, 400-01 (1993).  The level of competency required of a defendant to waive the right to counsel is the same as the level of competency required of a defendant to stand trial. *Id.* at 399.  Accordingly, a defendant's "technical legal knowledge" is "not relevant" to the competency determination. *Id.* at 400 (quoting *Faretta*, 422 U.S. at 836).

Moreover, a court's erroneous denial of the right to self-representation is not subject to harmless-error analysis; it requires automatic reversal of a criminal conviction. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless.").

## III.   Petitioner's Sixth Amendment Claim

Imani makes two principal arguments in support of his request for relief under the Sixth Amendment.  First, petitioner argues that the Wisconsin Supreme Court erred as a matter of fact in upholding the trial court's finding that Imani did not make a deliberate choice to proceed without counsel and was unaware of the difficulties of self-representation.  (Dkt. # 15, at 6-12).  Second, Imani argues because the facts of his case are "indistinguishable" from *Faretta*, the Wisconsin Supreme Court's decision is contrary to clearly established United States Supreme Court precedent.  (Dkt. # 15, at 16-18.) The court disagrees on both counts.

### A.  Knowing and Intelligent Waiver

As to Imani's first argument, this court is bound to give "great deference" to the factual findings of the state court, even if it would have reached a different conclusion. The circuit court deemed Imani's assertion of his right of self-representation to be no more than an "immature" response by a "disgruntled" litigant following the defeat of his

19

motion to suppress.  While the state court of appeals disagreed, the Wisconsin Supreme Court adopted the circuit court's findings.  To the extent that the trial court found Imani's request to represent himself was a "flippant" choice, not a deliberate one, that finding is a close one.  The record reflects that Imani was dissatisfied not only with his attorney's handling of the suppression hearing, but also with his failure to investigate the fingerprint evidence.  (Dkt. # 7, Exh. 19, at 31)("he has been telling me he is going to do something about for the last 40 or 50 days, which he hasn't done nothing about it").  Imani also believed that his attorney would not question witnesses adequately.  (*Id*. at 35.)  Imani further advised the circuit court that he had been "working on" his case for thirteen months and, after observing his appointed attorney's efforts at the pretrial hearing, was convinced that he could do at least as well.  (*Id*. at 33.)  Well before the pretrial hearing, Imani's cousin and co-defendant, Raziga Imani, had also requested and received leave to represent himself with the assistance of stand-by counsel.  Before the circuit court cut him off, Imani even appears to indicate that he had been "planning" to make a similar request.  (*Id*. at 39.)  Thus, it would have been reasonable to infer that Imani's request was not lightly made, but was the product of deliberate consideration.  At the least, the request appears to have been made unequivocally.

Still, this court cannot say that the trial court's finding that Imani's request was reflexive, rather than knowing and intelligent, was an unreasonable determination of the facts before it.  *See* 28 U.S.C. § 2254(d)(2).  As an initial matter, Imani had apparently never made a request to proceed *pro se* before the hearing.  At the hearing, the trial court

was obviously in the best position to judge Imani's demeanor.   The circumstances surrounding Imani's request support that court's factual assessment immediately after losing an important, perhaps dispositive, motion as disgruntled and disappointed, as well as to judge his request as reflexive, rather than the thoughtful crystallization of an earlier knowing intelligent decision to go it alone.   As importantly, despite being expressly invited to do so, Imani never raised the issue again until convicted.

Moreover, the circuit court had good reason to press Imani -- less than a month before trial and after going through "several" appointed counsel -- before allowing him suddenly to begin representing himself in a multiple-defendant criminal jury trial, especially when his codefendant had been given permission to go it alone some months before.   Certainly, once Raziga pled guilty, petitioner had a stronger case for being allowed to proceed *pro se*, even at the last minute, but petitioner's failure to renew his request more formally, after deliberation and thought, further supports the circuit court's original finding that petitioner's abrupt, impromptu request was not a knowing or intelligent one.

### B.  Facts of *Faretta*

Second, Imani argues the state court's denial of his request to proceed *pro se* is factually indistinguishable to *Faretta*. Notably, the defendant in *Faretta* requested permission to proceed *pro se* because he was dissatisfied with appointed counsel.  *See Faretta*, 422 U.S. at 807 (noting that Faretta wanted to represent himself instead of having a public defender, who he believed was "very loaded down with . . . a heavy case

load'"). Of course, dissatisfaction with appointed counsel is not uncommon. As the Third Circuit Court of Appeals noted in another case:

> almost all requests for *pro se* representation will arise from dissatisfaction with trial counsel. It is the rare defendant who will ask to proceed *pro se* even though he/she is thoroughly delighted with counsel's representation, ability, and preparation. Thus, that a defendant wishes to proceed without representation is not usually relevant to whether the defendant's request is clear and unequivocal.

*Alongi v. Ricci*, 367 F. App'x 341, 346-47 (3d Cir. 2010); *see also Batchelor v. Cain*, 682 F.3d 400, 408 (5th Cir. 2012) (noting that defendant's expression of dissatisfaction with appointed counsel could not be said to detract from the clarity of his *Faretta* motion).

In this case, the state does not appear to dispute that Imani's request for leave to proceed *pro se* was clearly and unequivocally made. In this respect, the present case is similar to *Faretta*, which also involved a request for self-representation only "weeks before trial."

Assuming petitioner's assertion of the right to represent himself one month before trial was clear and unequivocal, it triggered a Sixth Amendment obligation by the trial court to make Imani "aware of the dangers and disadvantages of self-representation" so that the record would establish that his choice to waive the right to counsel was voluntarily and intelligently made. *Faretta*, 422 U.S. at 835; *see also Patterson v. Illinois*, 487 U.S. 285, 299 (1988) ("we require a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than we require for a Sixth Amendment waiver during postindictment questioning"); *United States v. Sandles*, 23 F.3d 1121, 1127 (7th Cir. 1994). But this is more a protection against an uninformed *waiver*

of the right to counsel, than it is a protection from retaining one's Sixth Amendment right to counsel.[3]

Here, the trial judge asked a few questions about Imani's education and experience with the legal system, but made no inquiry about whether he understood the disadvantages of dispatching trained counsel.  In that regard, there was no discussion about the seriousness of the charges, the penalties or range of punishment that could be imposed, or the drawbacks or difficulties that Imani would face in the event that he proceeded *pro se*.  Instead, the judge found petitioner's request precipitous, rash and the immediate reaction to his disappointment with an adverse evidentiary ruling, rather than a knowing waiver.  Again, this court is not allowed to second guess that factual finding, at least where there is support for it in the record.

On the other hand, the trial judge appears to have denied the motion, at least in part, based on the belief that Imani lacked sufficient education or experience to proceed alone.  This finding would appear to violate the right to self-representation found in *Faretta*.  *See Moore v. Haviland*, 531 F.3d 393, 402-03 (6th Cir. 2008) ("For the judge not to have engaged in a *Faretta*-compliant colloquy upon reading the [defendant's written request to proceed *pro se*] was an unreasonable application of *Faretta*.").  So long as he is competent to stand trial, the defendant has a right under *Faretta* to insist that he be allowed to represent himself.  *Godinez*, 509 U.S. at 400 (noting that the standard for

---

[3] In *Faretta*, the defendant was forced to proceed to trial with appointed counsel from the public defender's office, while in *Klessing*, the defendant represented himself after his appointed attorney withdrew and the circuit court refused to appoint another.

competency to waive right to counsel is same as competency to stand trial and that defendant's lack of technical legal knowledge is irrelevant to right to self-representation); *accord Faretta*, 422 U.S. at 835-36.

The government argues that the state court's decision should be upheld because Wisconsin has long observed a "heightened standard" of competency for *pro se* defendants, which the Seventh Circuit has already determined to be constitutionally permissible under *Godinez*. *Brooks*, 380 F.3d at 1011-13. Accordingly, courts may prevent defendants who are mentally competent to stand trial from proceeding *pro se* if they "lack[] the capacity" to do so:

> Surely a defendant who, while mentally competent to be tried, is simply incapable of effective communication or, because of less than average intellectual powers, is unable to attain the minimal understanding necessary to present a defense, is not to be allowed to go to jail under his own banner. Neither the state, nor the defendant, is in any sense served when a wrongful conviction is easily obtained as a result of an incompetent defendant's attempt to defend himself. Thus, despite the fact that a defendant has been found competent to stand trial, it may nevertheless be determined that he lacks the capacity to represent himself.

*Pickens*, 96 Wis. 2d at 568 (citations and quotations omitted). The Wisconsin Supreme Court relied on this heightened standard in concluding that Imani lacked the requisite competence to represent himself. *See Imani*, 2010 WI 66, ¶ 36, 326 Wis. 2d at 205.

This argument appears to miss the extent of a defendant's right to proceed *pro se*. As the Wisconsin Supreme Court previously recognized in both *Pickens* and *Klessig*, "the competency determination should not prevent persons of average ability and intelligence from representing themselves unless 'a specific problem or disability can be identified

24

which may prevent a meaningful defense from being offered, should one exist.'" *Klessig*, 211 Wis. 2d 194, ¶ 24 564 N.W.2d at 724 (quoting *Pickens*, 96 Wis. 2d at 569).  In this case, Imani's mental competence was never put in question.  As the court of appeals noted, the trial court "identified no specific problem or disability which might significantly affect [Imani's] ability to communicate a meaningful defense." *Imani*, 2009 WI App 98, ¶ 17, 771 N.W.2d at 384.  If anything, the record indicates that petitioner was both articulate and capable of expressing arguments concerning his defense; the record certainly does *not* disclose any issue with his mental capacity or his ability to comprehend the consequences of going to trial without trained legal counsel.  To the extent that the circuit court believed that petitioner would be unable to adequately represent himself due to mere lack of education, experience or legal training, it improperly imposed additional criteria for determining whether a federal constitutional right was validly waived.

An accused's right to defend himself at trial is "fundamental." *Faretta*, 422 U.S. at 817. Where a defendant has properly asserted his right to represent himself and to waive his Sixth Amendment right to counsel, a court must permit the defendant to proceed without a lawyer so long as he possesses the requisite mental competency and has been made aware of the dangers and disadvantages of proceeding without trained counsel. Imani asserted his right, and the circuit court failed to honor that right.

Unfortunately for Imani, however, this is only the first of two factual hurdles he must clear to establish his request was indistinguishable from *Faretta*.  As the United

States Supreme Court held in *Godinez*, Imani must also have waived his right to counsel "knowingly and voluntarily." 509 U.S. at 401. Unlike the facts in *Faretta*, the trial judge here had ample reason to find that Imani was acting reflexively, without appropriate deliberation, and therefore could not waive his right to counsel knowingly, at least at that time. For the reasons discussed above, this court must defer to that finding.

In contrast, the *Faretta* court had actually *granted* Faretta's request to represent himself "[w]ell before trial" after questioning in open court and subject to reversal "if it later appeared that Faretta was unable adequately to represent himself." 422 U.S. at 807-08. "Several week thereafter, but still prior to trial, the judge *sua sponte* held a hearing to inquire into Faretta's ability to conduct his own defense, and questioned him specifically about both the hearsay rule and the state law governing the challenge to potential jurors." *Id.* at 808 & n.3. Apparently dissatisfied with Faretta's answers, the judge then revoked what he found was Faretta's "privilege," rather than right, to represent himself. *Id.* at 808-10 & n.4.

Moreover, unlike *Faretta*, the trial judge here stated *expressly* that he was not closing the door on Imani's request, should he choose to renew it after appropriate deliberation. In contrast, the *Faretta* court essentially foreclosed any possibility of revisiting *sua sponte* his decision after finding that the defendant lacked "a constitutional right to represent himself," as well as could not have an intelligent and knowing waiver of "[t]hat privilege." 422 U.S. at 808-11 & n.4.

Having acted in a manner that the trial court expressly found rash, ignoring the court's invitation to renew his request after he calmed down and having chosen not to do so, the facts here are certainly distinguishable from *Faretta*.  Accordingly, Imani's petition for habeas relief pursuant to 28 U.S.C. § 2254 will be denied.

## IV.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.  A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case.  For the reasons already stated, the court concludes that Imani has made a substantial showing that his conviction may have been obtained in violation of clearly established federal law as decided by the Supreme Court, namely, the right to self-representation found in *Faretta v. California*, 422 U.S. 806 (1975).   Although a majority of the Wisconsin Supreme Court concluded that Imani's waiver of the right to counsel satisfied the protections supplied by state law in *State v. Klessig*, 211 Wis. 2d 194, 564 N.W.2d 716 (1997), three justices believed that the circuit court's colloquy was insufficient to evaluate or validate Imani's invocation of the right to self-representation. *See State v. Imani*, 2010 WI 66, ¶¶ 41-78, 326 Wis.2d 179, 208-226, 786 N.W.2d 40, 54-64 (Crooks, J., concurring in part, dissenting in part).[4]   While ultimately finding it distinguishable, this court also finds the issue a close one under *Faretta.*   Because reasonable jurists could debate whether a different result was required, the court will grant a certificate of appealability on this issue.

ORDER

IT IS ORDERED that:

1.   The petition filed by Rashaad A. Imani for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED and this case is DISMISSED with prejudice.  The clerk of court is directed to enter judgment for respondent and close this case.

---

[4] The concurring/dissenting opinion by Justice Crooks was joined by Chief Justice Shirley S. Abrahamson and Justice Ann Walsh Bradley.

    2.  A certificate of appealability is GRANTED.

Entered this 29th day of Septembr, 2014.

                                BY THE COURT:

                                /s/

                                _____

                                WILLIAM M. CONLEY
                                District Judge